PEOPLE'S TOBACCO COMPANY, LIMITED, *v.* AMERICAN TOBACCO COMPANY.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF LOUISIANA.

No. 124.   Argued January 4, 7, 1918.—Decided March 4, 1918.

As applied to a corporation defendant, the provision of the Sherman Act of 1890, § 7, allowing actions for treble damages to be brought in the district in which the defendant "resides or is found," means that the corporation must be present in the district, by its officers or agents, carrying on its business.

Upon consideration of the evidence, *held*, that the defendant corporation of New Jersey undertook in good faith to carry out a decree of dissolution made by the Circuit Court in New York, and to divest itself of a former branch business in Louisiana; and that subsequent service of process, upon the former manager of that business, in Louisiana, was ineffectual to bind the corporation.

Defendant's revocation of its designation of a former manager of its

former branch business in Louisiana, as its agent upon whom process might be served under the law of that State, was effectual, notwithstanding the instrument of revocation, attested under its seal and filed with the Louisiana Secretary of State, was executed by a vice president of the corporation, without formal sanction by the board of directors; it appearing that the vice president acted with the knowledge and consent of the corporation in carrying out the decree of dissolution.

What constitutes such a doing of business as will subject a corporation to service of process depends upon the facts in each case. The general rule is that the business must be of a nature warranting the inference that the corporation has subjected itself to the local jurisdiction, and is, by its duly authorized officers or agents, present within the State or district where service is attempted.

The fact that a foreign corporation owns stock in local, subsidiary companies, does not bring it within a State for the purpose of service of process upon it; nor does the practice of advertising its wares in the State and sending into it its agents, who, without authority to make sales, to collect money or extend credit, merely solicit orders of the retail trade to be turned over to local jobbers, to whom the corporation sells its goods and who charge the retailers therefor.

The Louisiana Act of 1904 (Laws 1904, Act No. 54, p. 133), as amended in 1908 (Laws 1908, Act No. 284, p. 423), providing for service of process on the Secretary of State of Louisiana, is not applicable, as construed by the State Supreme Court, to foreign corporations which have withdrawn from the State and ceased to do business there at the time of service, as in this case.

Affirmed.


THE case is stated in the opinion.


*Mr. Edwin T. Merrick*, with whom *Mr. Ralph J. Schwarz* was on the brief, for plaintiff in error:

Jurisdiction of the United States courts usually depends upon whether the defendant is an inhabitant or resident of the district where the suit is brought. When, therefore, the Sherman Anti-Trust Act provides (§ 7) that a defendant violating that act may be served where "found," it is apparent, we submit, that whether the defendant resided in or inhabited the district, or even whether it had

an agent in the district, is not the test. The test would seem to be whether the defendant violating this law may, by fair and reasonable process, be located and reached in the State and district where the injury was committed, without regard to the presence of an agent in the State, designated as such. Louisiana Act No. 149 of 1890, provides that whenever an outside corporation shall do any business whatever in the State without designating an agent upon whom process may be served, it may be sued upon any cause of action in the parish where the right or cause of action arose, and service of process may be made upon the person or persons, firm or company, acting or transacting such business for such corporation. With this act in force, defendant company entered the State, actually designated an agent therein and actually did business therein for many years. It thus came into the State accepting the terms of this statute. Mr. Irby and the Irby Branch of the American Tobacco Company were the ones, concededly, who transacted the business for, and acted for, the company in Louisiana, under the terms of the foregoing statute, and were so acting when the cause of action herein sued upon arose. Hence, we submit, that the defendant may be "found" within the State, by service upon the one thus transacting its business. *American Cotton Co. v. Beasley,* 116 Fed. Rep. 256. This is constitutional. *St. Clair v. Cox,* 106 U. S. 350, 356.

The business was not purely interstate in character; and whether such or not, the fact that it was actually being done in Louisiana makes the company subject to process and makes it "found" within the State, within the meaning of the Sherman Law. While the State might not be able to prevent such business or might not be able to burden it with licenses or taxation, because of the Constitution of the United States, none the less, such acts constitute doing business within the State and subject the defendant to service within the State as being "found"

therein. *International Textbook Co.* v. *Pigg*, 217 U. S. 91, 105; *International Harvester Co.* v. *Kentucky*, 234 U. S. 579, 585.

The so-called revocation of the power of attorney is merely a statement by a vice president and an assistant secretary that the American Tobacco Company has revoked authority of its resident agent and that the corporation has caused its seal and name to be subscribed. The corporation never considered the revocation. We think it will scarcely be denied that the action of the board of directors in making the appointment cannot be set aside by a vice president of the company without some evidence better than has been shown in the record that the vice president had the power to annul a formal resolution of the board of directors. Under the laws of Louisiana, as under general law, there was no authority in a vice president to revoke the power of attorney issued under the authority of the board of directors. Even a president's power is not thus conceded by the authorities. *Jackson Brewing Co.* v. *Canton*, 118 Louisiana, 826, 827.

The constitution and law of Louisiana required the appointment as a condition precedent to the right to do business, with the object of gaining jurisdiction over corporations so doing. This jurisdiction cannot be defeated and frustrated as to business done under the license to enter the State by withdrawing the power of attorney. *Michael* v. *Mutual Ins. Co.*, 10 La. Ann. 738; *Davis* v. *Kansas & Texas Coal Co.*, 129 Fed. Rep. 149; *Mutual Reserve Assn.* v. *Phelps*, 190 U. S. 148; *Mutual Ins. Co.* v. *Spratley*, 172 U. S. 617; *Hunter* v. *Mutual Reserve Life Ins. Co.*, 218 U. S. 587.

*Mr. Junius Parker* and *Mr. George Denegre*, with whom *Mr. Victor Leovy* and *Mr. Henry H. Chaffe* were on the brief, for defendant in error.

MR. JUSTICE DAY delivered the opinion of the court.

On January 4, 1912, the People's Tobacco Company, Limited, began suit against the American Tobacco Company in the District Court of the United States for the Eastern District of Louisiana to recover treble damages under § 7 of the Sherman Act of 1890. On January 5, 1912, service of process was made upon W. R. Irby as manager of the company. On January 16, 1912, the company filed exceptions to the service on the ground that it was a corporation organized under the laws of the State of New Jersey; that it was not found within the Eastern District of Louisiana or in the State of Louisiana, and was not engaged in business there, nor had it an agent therein; that W. R. Irby, upon whom service had been attempted, was not an officer, agent, or employee of the defendant, the American Tobacco Company, or authorized to accept service of process upon it at that time. On January 25, 1912, service was made upon the Assistant Secretary of State of Louisiana. Exceptions to that service upon practically the same grounds were filed by the defendant company. A further service was undertaken on February 2, 1914, on the Secretary of State of Louisiana and like exceptions were filed by the defendant company to that service.

Testimony was taken and upon hearing the District Court held that:

1. W. R. Irby was not the agent of the company at the time of the attempted service, and, therefore, the service upon him did not bring the company into court;

2. That the American Tobacco Company was not doing business in Louisiana at the time of the attempted service;

3. That the attempted service upon the Secretary of State of Louisiana did not bring the defendant corporation into court.

Section 7 of the Sherman Act provides that suits of the character of the one now under consideration may be brought in the district in which the defendant "resides or is found." When applied to a corporation this require-ment is the equivalent of saying that it must be present in the district by its officers and agents carrying on the business of the corporation. In this way only can a corporation be said to be "found" within the district. In that manner it may manifest its submission to local jurisdiction and become amenable to local process.

The testimony shows that up to November 30, 1911, the American Tobacco Company had a factory in New Orleans for the manufacture of tobacco and cigarettes known as the W. R. Irby Branch of the American Tobacco Company, of which W. R. Irby was manager. Under the law of the State it had filed in the office of the Secretary of State an appointment of W. R. Irby as agent, upon whom service of process might be made.

On November 16, 1911, the Circuit Court of the United States for the Southern District of New York made a decree dissolving the American Tobacco Company. Among other things that decree provided that the American Tobacco Company should convey its W. R. Irby Branch to a company to be formed and known as the Liggett and Myers Tobacco Company. Conveyances were made to carry out this purpose.

The American Tobacco Company by an instrument executed by Mr. Hill, its vice president, revoked the authority of W. R. Irby as its resident agent, and filed the revocation of authority in the office of the Secretary of State of Louisiana on December 15, 1911. W. R. Irby testified that thereafter he was the manager of the Liggett and Myers Tobacco Company, and that he had no connection whatsoever with the American Tobacco Company, nor had he drawn any salary from that company since December 1, 1911.

It is true that the record discloses some instances in which collections were made upon bills in the name of the Irby Branch of the American Tobacco Company after the revocation of Mr. Irby's authority as its agent. Most of them were stamped across the face, Liggett and Myers Tobacco Company.

There remained on hand with the Irby Branch at the time of the dissolution a quantity of cigarette paper which was continued to be delivered to purchasers by the employees of the Irby Branch of the Liggett and Myers Tobacco Company upon orders received from the American Tobacco Company, and for its benefit and upon its account. This practically continued until the stock was exhausted, which the testimony shows was within a month after the dissolution, and before the attempted service of process in this case.

There were lodged in the custom house in New Orleans powers of attorney of the American Tobacco Company giving authority to those named therein to do what was necessary to make out export papers on behalf of the company. These powers of attorney do not appear to have been revoked, and existed after the service of process. The defendant company issued circulars subsequent to the time it was served with process in this suit, it also advertised in the New Orleans newspapers.

A consideration of all the testimony leads us to the conclusion that the American Tobacco Company undertook in good faith to carry out the decree of dissolution, and to take that company out of business in the State of Louisiana. It is true, as found by the District Court, that at the time of the service, and thereafter, the American Tobacco Company was selling goods in Louisiana to jobbers, and sending its drummers into that State to solicit orders of the retail trade, to be turned over to the jobbers, the charges being made by the jobbers to the retailers. It further appears that these agents were not

domiciled in the State, and did not have the right or au-
thority to make sales on account of the defendant com-
pany, collect money, or extend credit for it. It also ap-
pears that the American Tobacco Company owned stock
in other companies which owned stock in companies car-
rying on the tobacco business in the State of Louisiana.
With these facts in mind we come to a consideration of
the proper disposition of the case.

We agree with the District Court that Irby at the time
of the attempted service upon him was not the author-
ized agent of the American Tobacco Company. On De-
cember 1, 1911, the American Tobacco Company conveyed
its Irby Branch to the Liggett and Myers Tobacco Com-
pany. On the same day W. R. Irby, who had been the
designated agent of the defendant company, resigned as a
director of the American Tobacco Company, and ceased to
remain in its employment. On December 15, 1911, the
power of attorney was revoked, as we have hereinbefore
stated, by the company filing an instrument of revocation
in the office of the Secretary of State of Louisiana; it is
true that the revocation was by one of the vice presidents
of the company and was attested by the seal of the cor-
poration. But we are not impressed with the argument
that this revocation was ineffectual because not sanc-
tioned by formal action of the board of directors of the
company. The vice president seems to have had author-
ity in the matter. Apparently he acted with the knowl-
edge and acquiescence of the corporation, and was carry-
ing into effect the decree of dissolution.

Upon the broader question, we agree with the District
Court that the American Tobacco Company at the time
of the attempted service was not doing business within
the State of Louisiana. The question as to what consti-
tutes the doing of business in such wise as to make the
corporation subject to service of process has been fre-
quently discussed in the opinions of this court, and we

shall enter upon no amplification of what has been said. Each case depends upon its own facts. The general rule deducible from all our decisions is that the business must be of such nature and character as to warrant the inference that the corporation has subjected itself to the local jurisdiction, and is by its duly authorized officers or agents present within the State or district where service is attempted. *Philadelphia & Reading Ry. Co.* v. *McKibbin,* 243 U. S. 264; *St. Louis Southwestern Ry. Co.* v. *Alexander,* 227 U. S. 218, 226.

The fact that the company owned stock in the local subsidiary companies did not bring it into the State in the sense of transacting its own business there. *Peterson* v. *Chicago, Rock Island & Pacific Ry. Co.,* 205 U. S. 364; *Philadelphia & Reading Co.* v. *McKibbin,* 243 U. S. 264, 268. As to the continued practice of advertising its wares in Louisiana, and sending its soliciting agents into that State, as above detailed, the agents having no authority beyond solicitation, we think the previous decisions of this court have settled the law to be that such practices did not amount to that doing of business which subjects the corporation to the local jurisdiction for the purpose of service of process upon it. *Green* v. *Chicago, Burlington & Quincy Ry. Co.,* 205 U. S. 530; *Philadelphia & Reading Ry. Co.* v. *McKibbin,* 243 U. S. 264, 268.

The plaintiff in error relies upon *International Harvester Co.* v. *Kentucky,* 234 U. S. 579, but in that case the facts disclosed that there was not only a continuous course of business in the solicitation of orders within the State, but there was also authority upon the part of such agents to receive payment in money, checks and drafts on behalf of the company, and to take notes payable and collectible at banks in Kentucky; these things, taken together, we held amounted to doing business within the State of Kentucky in such manner as to make the Har-

vester Company amenable to the process of the courts of that State.

As to the attempted service of process upon the Secretary of State of Louisiana under the Louisiana Act of 1904 [Laws 1904, Act No. 54, p. 133], as amended 1908, [Laws 1908, Act No. 284, p. 423], we understand the act, as construed by the State Supreme Court, is not applicable to foreign corporations not present within the State and doing business therein at the time of the service, and having as in this case withdrawn from the State and ceased to do business there. *Gouner* v. *Missouri Valley Bridge & Iron Co.*, 123 Louisiana, 964.

We reach the conclusion that the District Court did not err in maintaining the exceptions filed by the defendant company and in quashing the attempted service made upon it.

*Judgment affirmed.*

MR. JUSTICE MCREYNOLDS took no part in the consideration or decision of this case.